UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBORAH JASPER,

    Plaintiff,

v.                                                  Case No. 8:19-cv-711-T-CPT

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded for further proceedings.

I.

The Plaintiff was born in 1963, has a GED, and has past work experience as a crossing guard, custodian, housekeeper, and security guard. (R. 171, 224). In April 2016, the Plaintiff applied for DIB, alleging disability as of April 1, 2016, due to levoscoliosis, neck pain, back spasms, loose stool, a depressive disorder,

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit.

gastroesophageal reflux disease, irritable bowel syndrome (IBS), and the effects of a broken ankle. (R. 171, 223). The Social Security Administration denied her application both initially and on reconsideration. (R. 102, 108).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on March 26, 2018. (R. 31-59). The Plaintiff was represented by a non-attorney at that hearing and testified on her own behalf. (R. 32, 34-55). A vocational expert (VE) also testified. (R. 55-59).

In a decision dated May 29, 2018, the ALJ found that the Plaintiff: (1) met the requirements for insured status through December 31, 2020, and had not engaged in substantial gainful activity since her alleged onset date of April 1, 2016; (2) had the severe impairments of IBS, gastritis, chronic diarrhea, degenerative disc disease, and gastroesophageal reflux disease, as well as the non-severe mental impairment of depressive disorder; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform light work subject to certain physical and environmental restrictions;[2] and (5) based in part on the VE's testimony, could perform her past relevant work as a security guard. (R. 18-25). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 25).

---

[2] Of relevance here, these restrictions included that the Plaintiff was limited to frequent reaching with her right arm and had to have ready access to a restroom. (R. 20).

The Appeals Council denied the Plaintiff's request for review. (R. 1-3). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[4] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 860 (11th Cir. 2019) (per curiam) (quoting *Moore v. Barnhart*, 405

F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

III.

The Plaintiff raises two related arguments on appeal: (1) the ALJ's RFC determination and hypothetical question to the VE are not supported by substantial evidence because they failed to account for the Plaintiff's mental impairments, her need for frequent access to a restroom, and her cervical problems related to her right arm and neck; and (2) the ALJ did not properly consider the Plaintiff's subjective allegations concerning her difficulty leaving home and being around people, her fecal incontinence, and her lavatory requirements. (Doc. 25). Upon a thorough review of the record and the parties' submissions, the Court finds that the Plaintiff's contentions have merit and that the case must therefore be remanded.

A.

The Plaintiff's first argument is three-fold, implicating the ALJ's consideration of the mental health evidence, the ALJ's mental and physical RFC assessment, and the ALJ's hypothetical question to the VE. The Plaintiff asserts that the ALJ erred in all three of these areas, and the Court agrees.

1. *Mental Health Evidence*

The mental health evidence in this case is somewhat sparse and is comprised of records from the Plaintiff's primary treatment providers at Central Florida Health


Care (CFHC); assessments from a mental health facility known as the Peace River Center (Peace River); a September 2016 consultative psychological evaluation report from Allison L. Tarbox, Psy.D.; and Psychiatric Review Technique Forms (PRTFs) completed by two state agency psychological consultants.

Of significance here, the CFHC records indicate that the Plaintiff was diagnosed with major depressive disorder and prescribed medication on multiple occasions during the pertinent period. *See, e.g.,* (R. 502, 512, 518, 529, 541, 546, 548). The Peace River records similarly reflect that, based on biopsychological and psychological evaluations performed in the summer of 2016, the Plaintiff suffered from major depressive disorder (recurrent episode, severe), adjustment disorder with anxiety, and post-traumatic stress disorder (PTSD). (R. 407-18). The Peace River records also reveal exam findings of restless behavior, a sad/depressed/anxious/euthymic mood, and a constricted affect; as well as clinical symptoms of memory problems, chronic stress, depression, and anxiety.[5] (R. 407, 409, 416-17).

Dr. Tarbox's report likewise includes diagnoses of major depressive disorder (recurrent, mild, with anxious distress) and unspecified trauma and stressor related disorder, as well as exam findings of a euthymic mood, a constricted affect, and "fair" mental flexibility. Dr. Tarbox's report further documents the Plaintiff's reports of an

---

[5] The Peace River records additionally reference the Plaintiff's reports of, *inter alia*, depression, sadness, amotivation, anergy, anxiety, isolation, not wanting to leave the house, fear of large gatherings, irritability with people, and being overwhelmed in stores with too much activity. (R. 407, 412, 416).

irritable mood, depression, anhedonia, fatigue, withdrawal, avoiding stores and people, anxiety in crowded places, and not socializing. (R. 433-36). And, finally, the PRTFs reflect the state agency psychologists' opinions that the Plaintiff had two medically determinable mental impairments—an affective disorder and an anxiety disorder—both of which they found to be non-severe. (R. 66-68, 79-81).

The ALJ did not mention, much less consider and evaluate, any of this evidence in her decision. (R. 18-25). Her failure to do so constitutes error. *See Phillips*, 357 F.3d at 1238 (providing that the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case); *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (stating that an ALJ's review of the record must take into account and evaluate the record as a whole, and reversal is required when an ALJ focuses on evidence in support of decision and ignores other evidence) (citations omitted); *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir. 1985) (recognizing that an ALJ's failure to mention or consider contrary medical records, let alone articulate reasons for disregarding them, constitutes reversible error); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'") (citation omitted).

Nor is the ALJ's error harmless. Although none of the mental health records include a mental RFC assessment, the records contain diagnoses and clinical findings

supportive of the Plaintiff's subjective allegations of social difficulties stemming from her anxiety and depression.

In his memorandum, the Commissioner does not squarely address the ALJ's failure to consider this mental health evidence. Rather, he contends that the ALJ did not err in omitting a discussion of Dr. Tarbox's report because she was not a treating doctor and her exam findings were consistent with the ALJ's determination that the Plaintiff's mental impairment was non-severe. The Court, however, can only rely on what the ALJ said, not on a post-hoc rationalization tendered by the Commissioner on appeal. *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

The Court is likewise unpersuaded by the Commissioner's assertion that "the [ALJ's] decision reflects [that she] gave full consideration to [the] Plaintiff's condition as a whole." (Doc. 25 at 22). The Commissioner does not explain how the ALJ could have evaluated the entirety of the Plaintiff's condition without addressing any of the mental health evidence in the record.

The Eleventh Circuit's decision in *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005), upon which the Commissioner relies in this regard, is inapposite. In *Dyer,* the ALJ considered all of the probative evidence in the record but neglected to mention one of the claimant's pain medications when considering the claimant's subjective complaints of pain. 395 F.3d at 1211. Noting that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[,]" the Eleventh

Circuit found this omission inconsequential to the ALJ's credibility determination because the medication was prescribed for an injury unrelated to the claimant's alleged disabling impairments. *Id.* (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

Here, unlike *Dyer*, the ALJ's decision does not evidence that she assessed the full record and adequately evaluated the Plaintiff's condition as a whole. Indeed, as noted, the ALJ did not discuss *any* of the mental health records despite the Plaintiff's claim of a mental impairment. The Commissioner's reliance on *Dyer* therefore fails.

2. *ALJ's RFC Finding*

As referenced above, at step four of the sequential evaluation process, the ALJ must determine whether a claimant has the RFC to perform her past relevant work. *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by . . . her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a)). In assessing the claimant's RFC, the ALJ must consider all the claimant's medically determinable impairments, including those that are non-severe. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-69 (11th Cir. 2019) (per curiam) (citation omitted); 20 C.F.R. § 404.1545(a)(2). The RFC analysis at step four therefore represents a more detailed evaluation of the functional import of a claimant's impairments than that required at step two. *Id.* at 1269 (noting that the mental RFC assessment used at step four "requires a more detailed assessment" than that conducted at step two) (internal quotation marks omitted); *see also* Social Security Ruling (SSR) 96-8p, 1996 WL

374184, at *4 (July 2, 1996) (observing that the criteria used to rate severity of mental impairments at step two do not amount to an RFC assessment and that a "more detailed" evaluation is mandated at step four).

By the Court's review, the ALJ did not satisfy her obligations at step four. While ostensibly acknowledging that her mental health findings at step two were not a substitute for the more thorough mental RFC assessment necessitated at step four (R. 20), the ALJ's subsequent discussion regarding the Plaintiff's RFC and the Plaintiff's ability to work contains no such assessment. (R. 20-24). The ALJ's RFC evaluation omits any discussion of the extent to which the Plaintiff's medically determinable impairment of depressive disorder altered her vocational capacity. In fact, the ALJ did not make any findings at step four regarding the Plaintiff's mental limitations or the evidence showing how they affected her ability to work. Instead, the ALJ focused entirely on Plaintiff's physical impairments. This also was error. *Schink*, 935 F.3d at 1269.

That the ALJ may have considered the Plaintiff's mental conditions in her RFC assessment *sub silentio* and impliedly determined that they did not significantly limit the Plaintiff's work-related mental abilities does not cure this deficiency. *Id*. As the Eleventh Circuit noted in *Schink*, "our precedent holds [that an] ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right." *Id*. (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)); *see also Hudson*, 755 F.2d at 785 (holding that failure to consider a claimant's impairments in

combination "requires that the case be vacated and remanded for the proper consideration").

The Commissioner's contention that the Plaintiff failed to meet her burden of proving that she had a severe mental impairment at step two misapprehends the nature of the Plaintiff's argument. Her contention is that the ALJ erred at step four—not at step two—by failing to address the import of her non-severe mental impairment and her alleged mental limitations when assessing her RFC and her ability to perform past relevant work. (Doc. 25 at 16-18). The Commissioner offers little response to this contention, asserting only that the ALJ did not need to include any mental restrictions in the RFC determination because the Plaintiff's mental impairment was non-severe. That assertion, however, runs afoul of *Schink*. To the extent the Commissioner claims the mental health evidence is consistent with the ALJ's mental RFC finding, the Commissioner again engages in impermissible post-hoc rationalization. *See Watkins*, 457 F. App'x at 872.

The ALJ's physical RFC finding is flawed as well. That RFC finding includes a requirement that the Plaintiff have "ready access to a restroom," which the ALJ posited in her decision could be accommodated by set fifteen-minute breaks in the morning and afternoon, as well as a thirty-minute lunch period. (R. 20). As urged by the Plaintiff, however, it is unclear how her need to have a lavatory nearby due to her diarrhea and/or fecal incontinence can be met by such a rigid break schedule.[6]

---

[6] The Plaintiff's argument that the ALJ failed to account for her inability to use her right arm and turn her neck (Doc. 25 at 19) is separately addressed below.

Notably, the Commissioner does not counter the Plaintiff's argument and, in fact, does not address it at all. Should the ALJ include this restriction in her RFC finding on remand, she must adequately explain how the normal breaks accorded workers—which are typically at specified times—can reasonably accommodate the Plaintiff's restroom limitations.

3. *ALJ's Hypothetical Question to VE*

Because the ALJ's RFC finding is flawed as set forth above, the Plaintiff's related challenge to the completeness of the hypothetical question posed to the VE similarly compels remand. It is well established that, when employing a VE, the ALJ must formulate hypothetical questions which include all of the claimant's impairments and limitations. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). Where the hypothetical questions posed to a VE do not comprehensively describe all of the claimant's impairments and restrictions, an ALJ's decision based significantly on the VE's testimony is unsupported by substantial evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Here, as previously explained, the ALJ failed to address the import of the Plaintiff's depressive disorder and to sufficiently explain the limitation regarding her need for ready access to a restroom. As a result, the hypothetical questions posed to the VE, upon which the ALJ predominantly relied in finding that the Plaintiff could perform her past relevant work, may not have adequately accounted for all of the

Plaintiff's restrictions. This is particularly notable since the VE testified that the Plaintiff would be precluded from working if she required two unscheduled, fifteen-minute breaks in addition to the normal morning, lunch, and afternoon breaks; missed work one to two days a month or left work early due to IBS-related symptoms; or was only able to be on task 87% of the workday due to mental health conditions and pain. (R. 57-59).

B.

In light of the above findings, the Court need not reach the Plaintiff's second claim of error that the ALJ did not properly consider her subjective allegations. *See Demenech v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other issues raised). The Court will nonetheless address the claim in brief, however, in the interest of completeness.

Where, as here, the ALJ discounts a claimant's testimony concerning her subjective complaints after finding a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must "articulate explicit and adequate reasons" for doing so. *Dyer*, 395 F.3d at 1210 (citation omitted). Moreover, the ALJ's reasons must be supported by substantial evidence, *Foote*, 67 F.3d at 1562, and must "take into account and evaluate the record as a whole," *McCruter*, 791 F.2d at 1548.

In assessing the Plaintiff's RFC in this case, the ALJ failed to consider the Plaintiff's subjective allegations that she had difficulty being around people and leaving her home due to anxiety, depression, and PTSD. (R. 49-51, 54). While the ALJ stated in support of her RFC finding that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted with the objective medical and other evidence" (R. 20), her decision—as previously noted—reflects no consideration of the Plaintiff's alleged mental health symptoms at step four (R. 20-24). This too constitutes error. *Schink*, 935 F.3d at 1269; *Dyer*, 395 F.3d at 1210. That the ALJ generally acknowledged the allegations at step two does not cure this deficiency. *Schink*, 935 F.3d at 1269-70. Nor does the Commissioner's post-hoc rationalization. *See Watkins*, 457 F. App'x at 872.

The ALJ further erred in evaluating the Plaintiff's assertion that her ability to reach was restricted.[7] While the ALJ found the Plaintiff was limited to frequent reaching with her right arm, the ALJ failed to articulate explicit and sufficient reasons for discounting the Plaintiff's claimed inability to reach over her head. (R. 20-22).

In addition, several of the reasons the ALJ provided for declining to credit the Plaintiff's allegations of overall neck, back, and arm pain give the Court pause. (R. 21-22). The ALJ found, for example, that imaging of the Plaintiff's cervical spine displayed "normative results." *Id.* at 20. The ALJ, however, omitted other relevant

---

[7] The Plaintiff testified to neck and shoulder pain, difficulty turning her neck, and an inability both to reach overhead and to lift more than ten pounds. (R. 43, 47-48, 52).

findings reported on the imaging and did not address the interpretation of those results by the Plaintiff's physician. *Compare* (R. 21) *with* (R. 392, 399, 637).

Similarly, the ALJ referenced a treatment record that reflected "essentially normative observations" of the Plaintiff's neck and musculoskeletal areas. (R. 21). That record, however, was an emergency room visit when the Plaintiff presented for a possible allergic reaction. (R. 1543, 1544).

Finally, in rejecting the extent of the Plaintiff's claimed gastric problems,[8] the ALJ again mischaracterized a number of the records upon which she relied. The ALJ noted, for example, the "effectiveness of an over-the-counter medication," citing to a treatment record in which the Plaintiff had told her doctor she could resolve her symptoms with the non-prescription drug, Imodium. (Tr. 23). The treatment record in question, however, states only that the Plaintiff could "sometimes" treat her symptoms of fecal incontinence and uncontrollable diarrhea with such over-the-counter medicine. (R. 463). The ALJ also failed to mention that that the Plaintiff takes prescription medication for her IBS. *See, e.g.* (R. 443, 463, 1619). These deficiencies should likewise be rectified on remand. *See McCruter*, 791 F.2d at 1548; *Broughton,* 776 F.2d at 961-62.

---

[8] The Plaintiff testified that she uses the bathroom about five times a day, sometimes for twenty to twenty-five minutes at-a-time, and that she has flare-ups about once a week which cause her to use the restroom eight times a day. (R. 46-47). The Plaintiff stated that she has had accidents at work and misses work altogether about once or twice a month because of fecal incontinence and diarrhea. (R. 53-54).

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is reversed and remanded for further proceedings before the Commissioner.

2. The Clerk is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court retains jurisdiction on the matter of attorney's fees and costs pending further motion.

DONE and ORDERED in Tampa, Florida, this 4th day of September 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record